

James Davis
David O'Toole
*Attorneys for Plaintiff*
Federal Trade Commission
55 East Monroe, Suite 1860
Chicago, Illinois 60603
Voice: (312) 960-5634
Fax:   (312) 960-5600

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

FEDERAL TRADE COMMISSION

        Plaintiff,

        v.

GLOBAL MARKETING GROUP,
INC.; GLOBAL BUSINESS
SOLUTIONS, LLC; GLOBALPAY,
INC.; GLOBALPAY, LLC;
GLOBALPAY BV; SYNERGY
CONSULTING SERVICES, LLC;
FIRST PROCESSING
CORPORATION; and
IRA N. RUBIN;

        Defendants, and

PHOELICIA DANIELS;

        Relief Defendant.

**Civ. No.**  8:06 CV 2272-T30 TGW

## COMPLAINT FOR INJUNCTIVE AND
## OTHER EQUITABLE RELIEF

Plaintiff Federal Trade Commission ("FTC" or "Commission") for its Complaint alleges:

1.    The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing

and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§

6101 et seq., to obtain preliminary and permanent injunctive relief, rescission of

contracts, restitution, redress, disgorgement, and other equitable relief for

Defendants' deceptive and unfair acts or practices in violation of Section 5 of the

FTC Act, 15 U.S.C. § 45, and the FTC's Trade Regulation Rule entitled

"Telemarketing Sales Rule" ("TSR"). 16 C.F.R. Part 310.

## JURISDICTION AND VENUE

2.     Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §§ 45(a), 53(b),

57b, 6102(c), and 6105(b), and 28 U.S.C. §§ 1331, 1337(a), and 1345.

3.     Venue in this district is proper under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b)

and (c).

## PLAINTIFF

4.     Plaintiff, the FTC, is an independent agency of the United States Government created

by statute. 15 U.S.C. §§ 41 et seq. The Commission is charged, inter alia, with

enforcing Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or

deceptive acts or practices in or affecting commerce. The Commission also enforces

the TSR, 16 C.F.R. Part 310, which prohibits deceptive or abusive telemarketing

practices.

5.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), authorizes the FTC to initiate

federal district court proceedings, in its own name by its designated attorneys, to

enjoin violations of any provision of law enforced by the FTC, and to secure such

equitable relief as may be appropriate in each case, including redress, restitution and

2

disgorgement.  15 U.S.C. §§ 53(b), 57b, 6102(c), and 6105(b).

## DEFENDANTS

6.     Defendant Global Marketing Group, Inc. is a Florida corporation with its principal

place of business located in Tampa, Florida.  Global Marketing Group was

incorporated on October 2, 2001, and does or has done business as "Global

Processing" and "Global Processing, Inc."  Global Marketing Group transacts or has

transacted business in the Middle District of Florida and throughout the United

States.

7.     Defendant Global Business Solutions, LLC is a Florida limited liability corporation

with its principal place of business located in Tampa, Florida.  Global Business

Solutions was incorporated on October 2, 2001, and does or has done business as

"Global Processing" and "Global Processing, Inc."  Global Business Solutions

transacts or has transacted business in the Middle District of Florida and throughout

the United States.

8.     Defendant Globalpay, Inc. is a Delaware corporation with its principal place of

business located in Tampa, Florida.  Globalpay, Inc. was incorporated on January 7,

2004, and does business or has done business as "Global Processing" and "Global

Processing, Inc."  Globalpay, Inc. transacts or has transacted business in the Middle

District of Florida and throughout the United States.

9.     Defendant Globalpay, LLC is a Florida corporation with its principal place of

business located in Tampa, Florida.  Globalpay, LLC was incorporated on January

3

15, 2004, and does business or has done business as "Global Processing" and "Global Processing, Inc." Globalpay, LLC transacts or has transacted business in the Middle District of Florida and throughout the United States.

10. Defendant Globalpay BV is a foreign corporation with its principal place of business located in Tampa, Florida. Globalpay BV does business or has done business as "Global Processing" and "Global Processing, Inc." Globalpay BV transacts or has transacted business in the Middle District of Florida and throughout the United States.

11. Defendant Synergy Consulting Services, LLC is a Florida corporation with its principal place of business located in Tampa, Florida. Synergy Consulting Services, LLC was incorporated on September 8, 2005, and does business or has done business as "Global Processing" and "Global Processing, Inc." Synergy Consulting Services, LLC transacts or has transacted business in the Middle District of Florida and throughout the United States.

12. First Processing Corporation is a Florida corporation with its principal place of business located in Tampa, Florida. First Processing was incorporated on January 10, 2002. First Processing transacts or has transacted business in the Middle District of Florida and throughout the United States.

13. Defendant Ira N. Rubin is or, at relevant times, has been an officer, director, or owner of Defendants Global Marketing Group, Inc., Global Business Solutions, Inc., Globalpay, Inc., Globalpay, LLC, and First Processing Corporation ("Corporate

4

Defendants"). Rubin does business as "Global Processing" and "Global Processing, Inc." At all relevant times, acting alone or in concert with others, Rubin has formulated, directed, controlled, or participated in the acts and practices of the Corporate Defendants, including the acts and practices set forth in this Complaint. Rubin resides in Tampa, Florida, with his wife, Relief Defendant Phoelicia Daniels. Rubin transacts or has transacted business in the Middle District of Florida and throughout the United States.

14.     Relief Defendant Phoelicia Daniels resides in Tampa, Florida with her husband, Defendant Ira Rubin. At relevant times, Daniels was the president and sole shareholder of Defendant First Processing Corporation. Daniels has received funds and other property derived unlawfully from payments by consumers as a result of Defendants' unlawful acts and practices as alleged herein.

## COMMERCE

15.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' DECEPTIVE AND UNFAIR BUSINESS PRACTICES

16.     Since at least January 2003, Defendants have provided substantial support and assistance to numerous scams. In particular, Defendants have assisted at least nine advance fee telemarketing schemes. The *modus operandi* of these schemes is substantially the same: Operating from Canada, these telemarketers target U.S.

5

consumers with poor credit and deceptively induce these consumers to authorize an electronic debit of their bank accounts for several hundred dollars in exchange for an unsecured major credit card.  Defendants debit the funds from the consumers' bank accounts through the ACH Network, deduct their processing fees from the gross proceeds, and forward the balance of the proceeds from the deceptive scheme to the telemarketers.  The consumer victims either receive nothing at all or, at best, receive a "benefits package" containing relatively worthless items.  No one ever receives the promised credit card.

17.     Defendants provided a broad range of services to these scams including, but not limited to: (a) payment processing: (b) customer service and complaint handling; (c) order fulfillment; and (d) list brokering.

### *ACH Payment Processing*

18.     Defendants obtain money from consumers on behalf of Defendants' telemarketing clients through the Automated Clearing House Network ("ACH Network"), a nationwide electronic funds transfer system that provides for the interbank clearing of electronic payments.

19.     Defendants process ACH transactions on behalf of clients that submit application materials, including facially illegal sales scripts, plainly indicating that the client intends to engage in conduct that violates the rules governing the ACH Network and/or Telemarketing Sales Rule.  Defendants draft, edit, review, and approve these sales scripts.

6

20. Defendants process ACH transactions on behalf of clients without first obtaining adequate information about the clients and their business practices or in situations where the evidence available to them demonstrates illegal activity is contemplated or ongoing.

21. Defendants frequently receive complaints about their clients from consumers, law enforcement, and the Better Business Bureau. These complaints concern deceptive and abusive business practices engaged in by Defendants' clients, including, but not limited to, the failure to provide unsecured major credit cards to consumers who paid an advance fee of several hundred dollars.

22. Defendants' clients generate extraordinarily high return rates. These rates range from 14 to several hundred times average rates in the ACH Network. On a regular basis, Defendants receive spreadsheets and other reports from their clients which detail ACH activity, plainly demonstrating the unusually high volume of returns.

23. Defendants perform work for clients that are engaged in outbound telemarketing, in direct violation of the rules governing the ACH Network that are intended to safeguard the integrity of the network and prevent it from being used for fraudulent purposes. These rules specifically prohibit processing ACH transactions on behalf of clients engaged in outbound telemarketing.

24. Defendants typically do not stop processing ACH transactions for their clients until forced to do so by Defendants' bank or by law enforcement. Even when their bank orders them to terminate a client, Defendants are aware that these clients simply

employ a new business name or front person making the same deceptive claims to consumers. Defendants continue processing for these clients.

25.     The activities of the Defendants are conducted in widespread violation of the rules, regulations and accepted practices of the ACH network.

### Customer Service, Fulfillment, and List Brokering

26.     In addition to payment processing, Defendants provide various other forms of assistance and support to clients engaged in deceptive and abusive sales practices. These forms of assistance include, but are not limited to:

   A.     *Customer Service.* Defendants provide telephone customer support services to deceptive and abusive telemarketing schemes. Specifically, Defendants enter into contractual agreements whereby they agree to receive and respond to inquiries, complaints, and refund requests, from consumers who purchase goods or services from Defendants' telemarketing clients. In numerous instances, in the course of providing customer service for their clients, Defendants have received complaints from consumers regarding the deceptive and abusive practices of these clients;

   B.     *Fulfillment services.* Defendants provide "fulfillment services," or arrange for third parties to provide such services, to deceptive or abusive telemarketing schemes. These fulfillment services include, but are not limited to, sending essentially worthless "benefits packages" to consumers who had been promised a major credit card by telemarketers. There is no correlation

8

between the promises made in sales scripts reviewed by Defendants and the

materials provided by Defendants to consumers;

C.  ***List brokering***.  Defendants sell lead lists to deceptive and abusive

telemarketing schemes.  These lists typically include personal and financial

information about consumers, including names, addresses, telephone

numbers, bank account and routing numbers, and other data.  Telemarketers

use these lists to contact consumers and attempt to sell their services.

27.   In processing ACH transactions for deceptive or abusive telemarketing schemes and

providing other forms of substantial assistance to these schemes, Defendants have

caused millions of dollars to be electronically withdrawn from the bank accounts of

U.S. consumers.  Defendants earn substantial fees for providing these services.

Defendants also profit from failed or returned transactions as well, charging

exorbitant fees for each returned ACH debit.

**THE FTC'S TELEMARKETING SALES RULE**

28.   In the Telemarketing Act, 15 U.S.C. §§ 6101-6108, Congress directed the FTC to

prescribe rules prohibiting abusive and deceptive telemarketing acts or practices.  On

August 16, 1995, the FTC promulgated the TSR.  16 C.F.R. Part 310.  The TSR

became effective on December 31, 1995.  On December 18, 2002, the FTC

promulgated amendments to the TSR.  The amendments became effective on March

31, 2003.

29.   The TSR prohibits telemarketers and sellers from "making a false or misleading

9

statement to induce any person to pay for goods or services." 16 C.F.R. § 310.3(a)(4).

Such conduct constitutes a deceptive telemarketing act or practice and a violation of

the TSR.

30.     The TSR also prohibits telemarketers and sellers from requesting or receiving

payment of any fee or consideration in advance of obtaining a loan or other extension

of credit when the seller or telemarketer has guaranteed or represented a high

likelihood of success in obtaining or arranging a loan or other extension of credit. 16

C.F.R. § 310.4(a)(4).  Such conduct constitutes an abusive telemarketing act or

practice and a violation of the TSR.

31.     The TSR also prohibits a person from providing "substantial assistance or support" to

any seller or telemarketer when that person "knows or consciously avoids knowing"

that the telemarketer is engaged in acts or practices that violate 16 C.F.R. §§ 310.3(a)

or 310.4 of the Rule.  16 C.F.R. § 310.3(b).  Such conduct constitutes a deceptive

telemarketing act or practice and a violation of the TSR.

32.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section

18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), violations of the TSR constitute

unfair or deceptive acts or practices in or affecting commerce, in violation of Section

5(a) of the FTC Act, 15 U.S.C. § 45(a).

33.     Defendants have processed ACH transactions and provided related services on behalf

of persons who are "sellers" or "telemarketers" engaged in "telemarketing," as those

terms are defined in Sections 310.2(r), (t), and (u) of the TSR as promulgated in

10

1995, renumbered but unchanged as Sections 310.2(z), (bb), and (cc) of the TSR as amended in 2003.

## VIOLATIONS OF THE TELEMARKETING SALES RULE

## COUNT I

### *Assisting and Facilitating Telemarketing Sales Rule Violations*

34.    In numerous instances, Defendants have provided substantial assistance or support, including, but not limited to (i) ACH payment processing services, (ii) customer support services, (iii) fulfillment services, and (iv) list brokering, as described in Paragraphs 16 through 27, to sellers or telemarketers whom Defendants knew or consciously avoided knowing:

    A.    induced consumers to pay for goods and services through the use of false or misleading statements in violation of Section 310.3(a)(4) of the TSR; or

    B.    falsely represented that after paying an advance fee, consumers are guaranteed or highly likely to receive a credit card or obtain a loan, in violation of Section 310.4(a)(4) of the TSR.

35.    Defendants' acts or practices alleged in Paragraph 34 constitute deceptive telemarketing acts or practices in violation of Section 310.3(b) of the TSR and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

36.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "deceptive" or "unfair" acts and practices in or affecting commerce.  Under Section 5(n) of the FTC Act, an act or

practice is unfair if it causes or is likely to cause substantial injury to consumers that is not reasonably avoidable by consumers and is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

## COUNT II

### *Unfair Acts or Practices*

37.   Defendants' acts and practices in processing debit transactions to consumers' bank accounts, as described in Paragraphs 16 through 27, cause or are likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and which is not outweighed by countervailing benefits to consumers or competition.

38.   Therefore, Defendants' acts and practices, as described in Paragraph 37, are unfair and violate Section 5(a) of the FTC Act, 15 U.S.C.§ 45(a).

## CONSUMER INJURY

39.   Consumers throughout the United States have suffered, and continue to suffer, substantial monetary loss as a result of Defendants' unlawful acts or practices.  In addition, Defendants have been unjustly enriched as a result of their unlawful practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

40.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other ancillary equitable relief, including consumer redress,

12

disgorgement, and restitution, to prevent and remedy violations of any provision of law enforced by the Commission.

41.    Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers or other persons resulting from Defendants' violations of the TSR, including the rescission and reformation of contracts and the refund of monies.

42.    This Court, in the exercise of its equitable jurisdiction, may award other ancillary relief to remedy injury caused by Defendants' law violations.

## PRAYER FOR RELIEF

43.    WHEREFORE, plaintiff, the Federal Trade Commission, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A.    Award plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief;

B.    Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C.    Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the TSR, including,

13

but not limited to, rescission of contracts, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.      Award plaintiff the costs of bringing this action, as well as such other and additional equitable relief as the Court may determine to be just and proper.


                                        Respectfully Submitted,

                                        WILLIAM BLUMENTHAL
                                        General Counsel

DATED: Dec. 6           , 2006
                                        _____
                                        JAMES H. DAVIS, Trial Attorney
                                        DAVID A. O'TOOLE
                                        Federal Trade Commission
                                        55 East Monroe Street, Suite 1860
                                        Chicago, Illinois 60603
                                        Voice: (312) 960-5634
                                        Fax:   (312) 960-5600
                                        email: jdavis@ftc.gov
                                               dotoole@ftc.gov

14