UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL MARKETING GROUP, INC.; GLOBAL BUSINESS SOLUTIONS, LLC; GLOBALPAY, INC.; GLOBALPAY, LLC; GLOBALPAY BV; SYNERGY CONSULTING SERVICES, LLC; FIRST PROCESSING CORPORATION; and IRA N. RUBIN;<br><br>Defendants, and<br><br>PHOELICIA DANIELS;<br><br>Relief Defendant. | Case No. 8:06-cv-2272-T-30 76w<br><br>PLAINTIFF FEDERAL TRADE COMMISSION'S DECLARATION IN SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND APPLICATION TO FILE PAPERS UNDER SEAL |

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, James Davis submits the following declaration:

1. I am an attorney employed by plaintiff Federal Trade Commission ("FTC") in the Midwest Regional Office, Chicago, Illinois.

2. Plaintiff has not attempted to notify Defendants of FTC's *Ex Parte* Motion for Temporary Restraining Order with Asset Freeze and Other Relief ("Motion"), nor should such notice be given, for the following reasons.

3.      The evidence set forth in plaintiff's Memorandum of Points and Authorities and accompanying exhibits, filed concurrently with plaintiff's Motion, which I have personally reviewed, show that Defendants have engaged, and are likely to continue to engage, in a scheme to deprive consumers of substantial amounts of money through fraud and deception.

4.      The evidence shows that Defendant Ira Rubin is the owner and/or principal of several corporations that do business as Global Processing. Defendants' principal place of business is in Tampa, Florida.

5.      The systematic fraud perpetrated by Defendants and the personal responsibility of Defendant Rubin for that fraud provides motivation and opportunity for asset dissipation and destruction of records.

6.      Good cause exists to believe that immediate and irreparable damage to the Court's ability to achieve effective final relief for consumers in the form of monetary redress will occur from the sale, transfer, concealment, or other disposition by Defendants of their assets if they are notified of plaintiff's Motion prior to a hearing thereon.

7.      To the best of the FTC's knowledge, Defendants are not aware that the FTC has uncovered evidence of their fraud or that the FTC is seeking redress from them. In light of the pervasive nature of Defendants' fraud, the FTC believes significant risk exists that Defendants may dissipate assets if they are put on notice of the FTC's intention to seek restitution for defrauded consumers.

8. Defendants' deceptive actions, coupled with the ease of transferring money assets, Defendants' maintenance of overseas bank accounts, and Defendant Rubin's prior criminal conviction for bank, wire, and mail fraud, support the likelihood that these Defendants would destroy or conceal documents and conceal or dissipate assets if they were to receive advance notice of the FTC's Motion and proposed Temporary Restraining Order. Defendants are equally likely to attempt to escape liability even if they are specifically enjoined from destroying documents or dissipating assets.

9. Upon information and belief, the FTC has, in the past, attempted to obtain injunctive relief against defendants who, when given notice and the opportunity to be heard, attempted to destroy documents, fled the jurisdiction of the court, or wired assets to offshore banks.

10. The following examples, provided on information and belief, illustrate the FTC's experience that defendants who receive notice of the FTC's intent to file or the FTC's filing of an action alleging consumer fraud have immediately dissipated or concealed assets and/or destroyed documents:

a. In *FTC v. 4049705 Canada, Inc.*, 04 C 4694 (N.D. Ill. 2004), Canadian authorities executed a search warrant on the Canadian defendants. Later, the FTC filed its Complaint, and its motion for a TRO with an asset freeze, with notice to the defendants. The FTC subsequently discovered only through its own investigation that the defendants had made several transfers totaling approximately $70,000 after receiving notice of the FTC's action but before the Court entered the TRO. The FTC was unable to recover the $70,000.

3

The individual defendant was later held in criminal contempt for transferring real estate in violation of the court's asset freeze.

      b.     In *FTC v. Academic Guidance Services*, No. 92-3001 (AET) (D. N.J. 1992), defendants discovered that the FTC intended to file a case against them (and seek an *ex parte* TRO) the following week. An informant told the FTC that the defendants then leased a document shredder and spent the weekend destroying documents, which was confirmed by one of the defendants' employees.

      c.     In *FTC v. American National Cellular, Inc.*, CV-85-7375 WJR (C.D. Cal. 1985), the court issued an *ex parte* TRO with an asset freeze on November 12, 1985. A defendant learned of the court's ruling and immediately withdrew $1.2 million from his bank accounts before the banks were served with a copy of the freeze order. The defendant fled California and dissipated the money while living overseas.

      d.     In *FTC v. Osborne Precious Metals, Inc.*, CV-92-4194 AWT (C.D. Cal. 1992), the court issued an *ex parte* TRO on July 15, 1992. The court appointed receiver and his representatives effected service of the order the following day - - first at defendants' offices in Los Angeles, and an hour later, at their offices in Las Vegas. The receiver discovered that a number of business records in the Las Vegas offices had been destroyed shortly before his representatives arrived to secure the premises

      e.     In *FTC v. Equifin International, Inc.*, CV-97-4526 DT, 1997 U.S. Dist. LEXIS 10288 (C.D. Cal. July 3, 1997), after an *ex parte* TRO had been issued against the corporate defendants and their owner, and the order had been served on the corporate defendants, but

4

before the individual defendant had been personally served with the TRO, he directed an affiliate to withdraw bank funds from an account containing proceeds from the scam.

        f.        In *FTC v. Intellicom*, CV-97-4572 TJH (C.D. Cal. 1997), the FTC obtained an *ex parte* TRO and served banks at which the defendants were known to have accounts. One defendant, whose bank was served earlier in the day, called the bank and asked the branch manager to wire out approximately $100,000 held in an account that was specifically designated in the TRO as subject to the asset freeze.

        g.        In *FTC v. IntellinetCom, Inc.*, CV-98-2140 CAS (C.D. Cal. 1998), the FTC obtained an *ex parte* TRO and served the order on banks where the defendants were known or suspected to have accounts. While the person who was serving the TRO for the FTC was at one of the banks and speaking to a branch manager about the TRO, one of the defendants came into the bank, after having been served with the TRO, and attempted to withdraw money from his account there.

        h.        In *FTC v. Lopinto*, CV S-93-561 (LDG) (D. Nev. 1993), the district court issued an *ex parte* TRO with an asset freeze. The order was served on a bank where one of the corporate defendants maintained an account. However, before the bank could implement the freeze, the corporation withdrew $12,300 from the account.

        i.        In *FTC v. Thomas E. O'Day*, No. 94-1108-CIV-ORL-22 (M.D. Fla. 1994), the district court denied the FTC's request to issue a TRO with asset freeze without notice, and scheduled a noticed hearing on the relief sought. Several days later, the Federal Bureau of Investigation executed a search warrant on defendants' business premises as the FTC served

notice of its action and the upcoming hearing. Within hours, an individual defendant withdrew approximately $200,000 from one of his bank accounts.

      j.      In *FTC v. Applied Telemedia Engineering and Management, Inc.*, No. 91-635 (S.D. Fla. 1991), the defendants were advised, pursuant to an agreement with the FTC, that the FTC had filed its complaint and intended to seek a TRO with an asset freeze from the court. When the FTC's agents went to the defendants' offices to serve process, they observed the defendants removing boxes of documents from the premises. The FTC moved for, and received, an *ex parte* TRO the following day.

      k.      In *FTC v. United Consumer Services*, No. 94-CV-3164-CAM (N.D. Ga. 1994), the FTC attempted to serve a TRO with asset freeze upon a defendant who was traveling on business. When the defendant's lawyer notified his client of the order, the defendant went directly to his bank and removed $100,000 from a corporate bank account. The FTC learned of the withdrawal only after receiving the account statements from the bank.

For all of the foregoing reasons, in the interests of justice, the FTC's Motion for a temporary restraining order should be granted *ex parte*.

I swear under penalty of perjury that the foregoing is true and correct.

Executed on  Dec. 5 , 2006.

James Davis
Federal Trade Commission
55 East Monroe Street, Suite 1860
Chicago, Illinois 60603
(312) 960-5634 [Telephone]
(312) 960-5600 [Facsimile]